BISHOP, Judge, dissenting.
In my review of the record, this case seems less a "sex trafficking" case (as characterized by the State and the majority opinion), and more a case of a sexually active high school couple who made an irresponsible decision to experiment with their sexuality by engaging in two "threesome" sexual encounters which Stubblefield arranged through Craigslist. One of those two encounters included Gibson. Stubblefield, age 18 at the time, attended the same high school as E.L., and the two had been sexually active with each other for about 6 months when Stubblefield proposed the threesome sexual encounters, to which E.L. agreed. Because E.L. was about 5 months shy of turning 16, she could not legally consent to those encounters. According to E.L., Stubblefield wanted to "explore his sexuality." Contrary to the majority's assertion, my description above does not attempt to diminish Gibson's culpability, nor is it based on an antiquated misperception. Rather, it simply sets forth information contained in the record before us. But no matter how we might frame the facts, my dissent is driven by our standard of review. When reviewing a trial court's imposition of a sentence, this court's review must be constrained to determining only whether the trial court abused its discretion. A judicial abuse of discretion exists only when the reasons or rulings of a trial judge are clearly untenable, unfairly depriving a litigant *571 of a substantial right and denying a just result in the matters submitted for disposition. State v. Parminter , 283 Neb. 754, 811 N.W.2d 694 (2012). The record in this case supports the district court's decision to impose probation; accordingly, its decision is not "clearly untenable," meaning it is not clearly indefensible, unsound, or flawed. See id. at 757, 811 N.W.2d at 697.
Most notably, at the sentencing hearing, the district court referred to the "number of issues" Gibson's attorney addressed at the hearing which qualified as "mitigating circumstances" for Gibson. These remarks included the attorney's statement that he had "helped [Gibson] in his divorce" years ago, so he had known Gibson for a number of years. Gibson's attorney then pointed out the following: Gibson had given "16 honorable years of service" in the U.S. Air Force; the courtroom was "full of people" supporting Gibson; there were "in excess of 30 letters [written] attesting to [Gibson's] good character and reputation"; Gibson was honest and cooperative when contacted by the police-he accepted responsibility *170 "from day one"; Gibson was "extremely embarrassed, ashamed, and remorseful for his actions"; the PSI shows "an individual who has exemplified what is the best of people" but also that "we are all prone to make mistakes, some more serious than others"; there were "pages of [Gibson's] awards, his decorations, his performance reports, all showing what a valued, trusted airman he was" in the Air Force; the clinical psychologist's letter noted Gibson was "not classif[ied] as a pedophile under DSM-5"; Gibson had no criminal history; Gibson had "very low risk assessment totals" under the categories of education, employment, family, companions, alcohol, drugs, criminal attitude, and antisocial; the administrative discharge proceedings that will take place will result in the forfeiture of Gibson's career in the Air Force after 16 years; all of Gibson's sex offender risk assessment totals were very low; Gibson would have to register as a sex offender; and Gibson posed little, if any, risk to society in the future. *572 Gibson's attorney acknowledged that Gibson had "a great lapse in judgment" when he went to Craigslist and responded to "an ad with some people who purportedly were representing themselves to be of a certain age." Gibson's attorney pointed out that subjecting Gibson to the terms and conditions required under probation would not show disrespect for the law or diminish the severity of the crime and that Gibson and society would be better served by placing him on probation and giving him an opportunity to better himself and be a productive member of society. Gibson personally informed the court that he was "extremely remorseful," not just for what he was going to lose, or for letting down his coworkers, but also for E.L. and her family.
The PSI states that Gibson "has a spotless criminal record other than his current legal situation" and that "[i]t appears that his behavior in this offense would be out of character for ... Gibson."
The district court found that Gibson had accepted responsibility for and appreciated the seriousness of his actions. In addition to the 180 days in jail, the 5 years of probation will require Gibson to comply with numerous conditions. These include the following: obey all laws and report any violation by the next business day; avoid social contact with persons having criminal records or who are currently on probation or parole; report to probation when directed and permit the probation officer to visit at all times and places; reside within the state unless otherwise authorized by the probation officer; obtain permission before changing address or employment; cooperate in all matters which might affect probation and truthfully answer all inquiries from the probation officer; maintain suitable employment; abstain from the use of alcohol or controlled substances (unless prescribed by a physician); cannot be present in any location where the primary business is to serve alcohol or attend any social function at which alcoholic beverages are served without permission *573 from the probation officer; submit to random chemical testing of blood, breath, or urine; submit to random searches and seizures of the person, premises, or vehicle without a warrant and whether or not probable cause exists upon the request of a probation officer or law enforcement officer when authorized by the probation officer; pay all fines, court costs, and fees; complete a psychosexual evaluation and follow all recommendations; continue therapy and medication management; attend any support group if deemed necessary by the probation officer; have no contact with the victim during the life of the probation; participate in "moral reconation" therapy; have no unfiltered access to the internet or to any social media sites; have no contact with *171 children under the age of 18; have no relationships with any individuals who have children under the age of 18; and submit to regular search and seizure of the person, property, or vehicle, to include electronic devices.
Despite these numerous requirements and restrictions on Gibson's life for the duration of his probation, the majority nevertheless concludes the district court abused its discretion by failing to impose incarceration instead of probation. The majority acknowledges that "[t]he record supports the sentencing court's decision to impose probation in lieu of incarceration based upon Gibson's unlikelihood to reoffend and the availability of treatment ...." However, the majority then focuses on "the nature of the crime and whether probation would depreciate its seriousness or promote disrespect of the law." It is difficult to imagine that the district court saw the crime as any less serious than this court, and it is not clear why a 5-year probation sentence on this record promotes disrespect for the law. To the contrary, the record before us fully supports the district court's decision to order probation when considering all sentencing factors, as well as those specific factors favoring withholding a sentence of imprisonment as set forth in § 29-2260(3).
*574 The majority also states that the district court's decision was improperly "based in part upon Stubblefield's involvement and culpability in the crime" and that this "was not an appropriate factor to consider and appears to have resulted in a more lenient sentence for Gibson." I do not read the district court's comment that it hoped E.L. "is given some sort of justice in [Stubblefield's] sentence, most significantly" to suggest that this was a factor the court relied upon when sentencing Gibson to probation. That comment could certainly mean that the district court expected Stubblefield to be more significantly sentenced than Gibson and that this would result in a greater impact in terms of justice for E.L. However, that does not necessarily mean the court allowed consideration of Stubblefield's potential sentence to influence its decision when sentencing Gibson. And given the abundance of favorable information presented to the district court to support a sentence of probation, the district court's comment hardly rises to an abuse of discretion.
As noted in Gibson's brief, "While there is a temptation on a visceral level to conclude that anything less than incarceration depreciates the seriousness of crimes of this sort, it is the function of the sentencing judge, in the first instance to evaluate the crime and the offender." Brief for appellee at 13. The appropriateness of a sentence is necessarily a subjective judgment and includes the sentencing judge's observation of the defendant's demeanor and attitude and all the facts and circumstances surrounding the defendant's life. State v. Brown , 300 Neb. 57, 912 N.W.2d 241 (2018). And as this court recently stated when denying relief in an excessively lenient sentence appeal involving a 4-year combined sentence for a defendant convicted of two drug offenses and three firearm offenses:
Although [the defendant's] history [three prior felony convictions] and the nature and circumstances of the present offenses certainly could have supported a longer term of incarceration [the defendant faced up to *575 250 years' imprisonment], when reviewing sentences for excessive leniency, we do not review the sentence de novo and the standard is not what sentence we would have imposed.
State v. Felix , 26 Neb. App. 53, 60, 916 N.W.2d 604, 609 (2018) (noting abuse of *172 discretion standard of review applies whether reviewing sentence for leniency or excessiveness). Accordingly, adhering to the abuse of discretion standard of review applicable to this court's review of Gibson's sentence, and finding no abuse of discretion by the district court, I would affirm Gibson's conviction and sentence.